Court of Appellate, this court should reverse the lower court's plan of summary judgment because first, it ignored or it failed to apply the facts in a light most favorable to Misdeed. Second, it converted an issue of fact into a question of law or an issue of law by concluding that the Postal Service had provided Misdeed with a reasonable opportunity to pass the physical examination requirement of reinstatement. As the lower court correctly acknowledged, the issue of reasonableness is typically an issue of fact to be tried. There is no exception in this case. Third, it permitted the Postal Service to incorporate PS form 2485 into the interpretation of the settlement agreement. There are a lot of issues and questions floating around, but I guess I just want to get to the heart of your case, or at least what you think your strongest point is. Is it with regard to the fact that once she got the letters in late December, she acted reasonably and diligently in doing it, or is it about this other stuff, like they should have never imposed the 70 pound requirement at all, or what? The primary issue is when she became aware of the issue with the lifting restriction and being given enough time to cure that deficiency. That is the crux of our case, that she was not provided a reasonable opportunity from that time. I believe the lower court analyzed the date to determine reasonableness from June 2005 to when the agreement was entered and to February 2006, when Ms. Speed finally received the release from her personal position. So it is our argument that we misapplied the date. The date would be... What was the origin of the 20 pound reduction in the general requirement for this position? During mediation, she had an injury, a personal injury. Understand that. What was the origin of the 20 pound reduction in the normal requirement? The origin, there was no origin. Where did it first appear in the record? The 20 pound restriction did not appear in the medical records or in the record on appeal. When do we first hear about it? They first heard about it, the Postal Service first heard about it in February of 2005 during her deposition on... But it comes from Dr. Fogarty, who is a state doctor under the workers' compensation, a different program, right? Correct. He introduces it. Did the United States government ever agree that they would reduce the requirements for this position? Yes. They did? Ms. Speed stated during the mediation, there was an agreement, an understanding that she had the restriction at that time and that they would permit her to return. Now keep in mind that Ms. Speed had never had to lift 70 pounds, so this wasn't a real issue. However, the form, which is form 2485, which gets back to my argument, was actually incorporated into the settlement agreement as parole evidence. The court said no parole evidence would be admitted because the contract... I don't understand. There's nothing in the agreement that has anything other than she has to meet whatever the qualifications, the normal qualifications are, the normal fitness. That is correct. So you're suggesting because they knew that before she signed the settlement agreement she had been under a 20 pound restriction that necessarily that restriction was incorporated into the agreement? Well she knew, yes, yes. That restriction was... Was that restriction, though, there's this parallel, not proceeding, but this is parallel life going on, which is she's collecting workman's compensation. I assume the letters there would say the limit is 20 pounds was related to her ability to receive the workman's comp. No? No, Judge. Then what would the letter, can you explain to us what was going on with the letter? Yes, the worker's comp, the injury that brought about the 20 pound restriction was after her termination. So this was a personal injury that had nothing to do with the worker's comp issue. The worker's comp issue was brought on by another injury. But the doctors in the worker's comp program have to determine whether you are fit to return to employment and when you are, that again, terminates your benefits. So doesn't the 20 pound requirement have something to do with that? Yes, I thought I saw on the record that she went back to Dr. Fogarty in February 2006 and then ultimately got the 20 pound restriction removed and then there, because of that, the workman's compensation benefits were thereby terminated at that point. Yes, I understand that. But at the time that she entered into the mediated settlement agreement, the 20 pound restriction was already known and the parties agreed to that. That's what the lower court stated. We could not get any parole evidence in. And what's contradictory about that is the lower court specifically allowed parole evidence in as it relates to actually get the form that says the 70 pound restriction on it and incorporate it into the document. In essence, that's what it did. Because in order to know what makes a person able to fully perform the job function as the settlement agreement stated, you would have to pull that document from some place. Ms. Feet was not provided this document until December 2005. So when she was placed on notice, that this was in fact the reason why they were saying she could not be reinstated, she had it removed because she had taken all these steps in order to be reinstated. She needed her job. At that time, she was unemployed and was unemployed. But wasn't the content of the letters strongly suggest, if not actually state, that this was a long-term, almost permanent limitation on her abilities, i.e. the 20 pound restriction? I thought there was at least some reference in the letters that the Postal Service was looking at. Yes, there may have been and I believe there is a conflict of information and reports. If you recall, Judge, when she went to the doctor in August of 2005 for the examination to return, Dr. Randall stated she did not need a restriction. He didn't see the need for a restriction. And therefore, he released her to full duty. This was in August of 2005, only two months after the settlement agreement. It's argued that she should have been able to proceed from that time on in reinstatement. Even assuming that there was a conflict, if you look at the letter from Dr. Carnow, which is a letter that follows Dr. Randall, he in essence says he believes Dr. Randall's report. So you're suggesting, I didn't know there was a dispute here, maybe I just missed it. You're suggesting that the 20 pound limitation was removed two months after the settlement agreement in August 2005, not in February of 2006? No, I'm suggesting that there were two opinions. Dr. Randall, in his review, stated there was no need for a restriction. That was his medical opinion. There was no need for a restriction. However, there was still a restriction by her personal physician. And so to reconcile the two, the practical thing to do would be what Dr. Carnow suggested, was to get a second opinion and permit that to be what governs. I think what Dr. Carnow suggested, among other things, was to go back to Dr. Fogarty to re-examine Ms. Beat to confirm Dr. Carnow's view that now in August of 2005, there's no longer a problem with Ms. Beat's shoulder, right? Yes. And in fact, that's what the Postal Service tried to do. Now they were trying to contact Dr. Fogarty and find out more, which is why they sent those release forms to your client, which she ultimately signed. Therefore, Ms. Beat understood at that point that the Postal Service was going to contact with all these doctors of hers to try to figure out to what extent are they still holding her to that 20-pound restriction. Ms. Beat at all times did not know that this 20-pound restriction, as she understood it, the 20-pound restriction was a part of the deal. So the information, the reports, all of the reports you're going to read in the record that were in 2005 from Dr. Randall, Dr. Fogarty, all of the interchanging of the medical records, the letters to the Postal Service, were never communicated to Ms. Beat. So how would she have knowledge that this is the problem? Ms. Planton-Northington, if you prevail, what's the basis for damages? Basis for damages are the damages that were caused by the result of the breach. And what would be the, well first, I'm not sure there's a breach, we've kind of been discussing that, but assuming there's a breach, what would be your claim for damages? The wages or the money she would have received. That would have to come under what entitling statute required, of course, under the Tucker Act? The Tucker Act. It would have to come under the Back Pay Act, right? No, I don't believe the Back Pay Act applies in this case because... I agree, it doesn't apply. So where did your damages come from? Well, the damages are presumed under common law for breach of contract. I mean, in any... What would be the damages? The damages... You can't have damages for a position unless you're appointed to that position. That's right. You were never appointed, so under no condition do you even have money damages, right? The appointment was, well, our position is that she was reinstated. There was no need for an appointment, but even that, the Back Pay Act... If she was reinstated, then she would have to be asking for back pay, right? No, she... Because she was entitled to pay because she was already in the position? See, in order to have damages, you have to have a position in the government. Yes, but this is a breach of contract issue, so even if we say there is no employment relationship, a person who has breached the contract would be obligated, if they're found liable, to pay the person for any damages that would flow from that breach. Yeah, but if you articulate, but we're in this case, and I think your theory of damages is, so tell me if I'm wrong, is they breached the settlement agreement. Therefore, if they had not breached the settlement agreement, they would have reinstated her or put her in this position as of August 2005, and so the relief she is seeking is the back pay that she would have earned if she had been appointed or put in that position back in August 5. Isn't that the theory upon which you're seeking relief here? No, I believe we... Can't be because you were never appointed, and that's test stand. You have to be appointed to have the money damages entitlement in advance to get jurisdiction. This is the complexities of the Tucker Act, I know. Yes, I understand that. However, we are proceeding under breach of contract. We're not proceeding under back pay act. Understood. If any person came in and they had a breach... But you have to have a statutory entitlement to damages in advance in order to have jurisdiction in advance of filing the case. Where is your entitlement to damages? I believe that the... The most you can say is if we would have won, they would have analyzed us to see if we were fairly to be reinstated. You still had to qualify to be reinstated. The most you can ask for is specific performance, which of course is not damages. You don't belong under the Tucker Act, and therefore, you don't have jurisdiction. You shouldn't be in this court. Isn't that right? And I know where you're going to go with this because I've served on the claims court, as it was called then. You're going to tell me, well, there's no remedy then because they won't give us specific performance in the district court. And I'm going to have to tell you, yes, I handled many of these cases. You're probably right. Your recourse is to Congress. It probably isn't a remedy. Well, we believe that damages are for any... I mean, we have cited in our brief cases that support that she can recover any damages as a result of a breach of contract. And I think it was a U.S. Navy case. And she did. Under the contract portion of this case, I had the Speed case a couple months ago, in which she recovered $155,000. That was settlement of the portion of her case that was indeed a breach. And that she received the money, and that's fine. Now we have a separate question, which is, was she afforded a full opportunity to apply for a job at the government? Exactly. And that's why we are requesting that... But the point is, even if you win that case, that she deserved a full opportunity, you don't have money damages because she doesn't have a position for which she received back pay, can receive back pay. But she had damages that were caused by their breach. She may have, as I suggest, an entitlement to some kind of reconsideration, specific performance, but she can't ask for that under the Tucker Act, which requires money damages presently due. If they breached the contract, then it would possibly even open up the Title VII claim that was dismissed pursuant to the settlement agreement. That's right. Then you'd get into the district court, and not the Court of Federal Claims. Thank you for your time. Thank you. Ms. Hogan. Good morning, Your Honors. May it please the Court. The trial court's grants of summary judgment in this case should be affirmed. Can we start where we ended with your friend on the other side, which is the Chief's line of questioning? In my experience, at least, the government's not shy about raising the flag of jurisdiction, or the absence of jurisdiction, in a lot of these cases. What's your view of jurisdiction here, along the lines of the Chief was pursuing, in terms of the remedy available? We originally moved to dismiss the first amended complaint on the basis that it was requesting specifically back pay, back and front pay, as well as specific performance in the form of reinstatement or reappointment to the position of the postal inspector, because those are issues, again, either because the Court of Federal Claims can't award specific performance, and also because any right to back pay is tied to an appointment to a position. The trial court granted that motion, in part, but permitted Ms. Speed to amend her complaint, first finding that, pursuant to this court's recent precedent, that damages are the presumed remedy in a breach of contract case, and permitted Ms. Speed to amend her complaint. In her second amended complaint, she alleged that her damages flowed from the breach of the loss of an opportunity to meet the three conditions precedent. We, again, moved this time for a motion for a more definite statement to, again, more fully articulate why it was exactly that that would be different from, essentially, an award of back pay, and the government's motion for summary judgment was granted on the merits. We didn't reach the issue of damages any further, but we would certainly, if this court were to reverse the decision and remand it back to the trial court, I think we would still maintain that any damages that flow from a breach of contract have to flow from the breach of that specific provision, the loss of a reasonable opportunity, which she has never been able to articulate as being anything different from the loss of pay. We also have an additional argument going more to the failure to mitigate, but again, I think that goes more to the merits of any damages claim, which the trial court didn't reach in this case. Can I move you to the merits? Sure. Why is it not assuming, and I think the trial court did assume, for probably very good reason, that we're assuming that she didn't get any of those letters until December. So we're looking at what she did between early December and February, when she did go to the doctor and have that restriction lifted. Why is that not reasonable diligence? The trial court kept going back to this whole eight-month period or whatever, but once you get to the stuff until December, why is, as I said, not two months, not reasonable diligence? We believe that's framing the question somewhat incorrectly. The claim that Ms. Speed is making is that the Postal Service did not provide her a reasonable opportunity to meet a three conditions precedent. So it is entirely appropriate to look, beginning from the day that the settlement agreement is signed, to look to see what is the Postal Service doing, how is it acting reasonably in trying to assist her in meeting this. So we do think it's appropriate to start looking in June of 2005 rather than December of 2005. Are you asking, in order to affirm, do we need to assume that she necessarily knew of the 70-pound restriction, that she needed to be able to meet the 70-pound restriction  No, because it's not a material fact. The material fact here, which is undisputed and is unambiguous, is that she had to be fit to fully perform the duties as a postal inspector. And that requirement is entirely incompatible with any view that she could come back to work on a restricted basis. And by articulating to her doctors in June 2005 that she was going back to work subject to a 20-pound restriction, and her insistence that she, again, using the term restriction multiple times, was subject to a 20-pound restriction, she may have had a subjective belief that she could return to work subject to a 20-pound restriction, but that was not compatible with the plain language of the settlement agreement. Well, maybe that's not the right way to frame it. Maybe the better way to frame it is she was never on notice that her 20-pound restriction was somehow a limitation on being fully fit to perform. Again, I think the idea, one, as the Court previously observed, the fact that she was receiving workers' compensation because she couldn't currently work as a postal inspector given her injuries, but also the idea that she did come back and say, I want a 20-pound restriction. Whether the specific requirements of the job were 70 pounds or 50 pounds or something like that, what she was asking for was clearly something less than the requirements of a postal inspector. Where did the 70-pound requirement come from? I mean, I see there's a medical form and there's options on that form. It can be a low weight, a medium weight, and then there's something lifting up to 70 pounds. Is there a manual or something like that that can comfort me into believing that the Postal Service always requires every postal inspector to be able to lift 70 pounds? Yes or no? No. Not no. I mean, we had interrogatory responses. We had the form itself, which was filled out by the Postal Service staff. The only evidence to the contrary that Ms. Speed brought up was her experience in the past that she had a sedentary job and that she didn't usually do anything physically, but that doesn't counter. Let me ask it to you differently. Are you aware of whether the Postal Service always checks the lifting up to 70 pounds box on that medical form for every single would-be postal inspector candidate? Always that box and not one of the other boxes? I would certainly be speculating if I were to say always, but that was the evidence we put forward that that is the requirement of the position. Whether every single form always includes that, I would obviously be speculating, but that's a requirement of the position. Again, just clarifying for my own, what is your position as to when she or someone similarly situated should have reasonably known that that was the requirement of the position? She may, I don't know, Your Honor. She may have known... Well, how can you evaluate whether or not she acted diligently in lifting her restrictions if you agree, if you do, that she had no basis to appreciate that her 20-pound restriction was not sufficient for the position? I think her use of the term restriction indicates she understood that what her current physical disability or status was, was incompatible or inconsistent with being able to fully perform the duties of the job. As soon as two weeks after the settlement agreement is signed, she goes to Dr. Fogarty, represents to Dr. Fogarty that she is returning to work subject to a 20-pound restriction. What if she had had a 60-pound restriction? Would that have been an entirely different case then? I mean, you say just because she had a restriction, then that in and of itself is sufficient. Well, what if she had a 60-pound restriction? Would that have been sufficient? Would it have been sufficient? Well, you're saying that she should have known just because she had a restriction that it was incompatible with her meeting the requirements of getting this job back. I just want to quiz you on what that means, that just because there was a restriction. So what if the restriction had been, in all the letters from the doctors, had been 60 pounds? Would that have been sufficient? Would she have been on notice that she had to get that restriction removed? I don't know that she would have been on notice necessarily, but the fact is that the condition of her returning to work was that she be found fit to fully perform the duties of the position. And the Postal Service went through multiple opportunities with her to resolve that question and ultimately said, we're not sure. Let's get some clarification from your personal position. And again, the trial court accepted her testimony that she didn't receive the first two letters that the Postal Service sent and didn't receive any responses to. But let's go to the December letter where it's very clearly laid out to her that this is what is holding up the process. She returns to the Postal Service and says, I'm going to cooperate only if you give me a 20 pound restriction. Under that fact, the Postal Service wasn't required to continue to assist her because she was asking for a term that was different both from the terms of the settlement agreement and also from the requirements of duty as a postal inspector. Okay, even agreeing with all of that, I guess I'm back to where I started, which is if we all agree that the first time she was really unnoticed that they were requiring her to lift this restriction of 20 pounds was sometime in December, why her getting the restriction lifted in February somehow didn't meet the reasonableness or whatever requirement we're imposing upon her? Because again, we're looking at the wrong... So I'll take... Certainly if the court looks at this between December and February, I agree that that looks reasonable, or at least the court could conclude that that looks reasonable. But we're not simply looking at saying she was notified in December. She could have come back to the Postal Service in December and said, okay, I can't get an appointment with my doctor until February. Please hold on. That would be a different story. What she comes back and says is that I will cooperate, I will obtain the necessary information from my current physician provided I receive a restriction. So she wasn't trying to cooperate with the process any longer. She was trying to change the terms of the agreement. And on that basis, the Postal Service determined that it didn't need to continue down this path because Ms. Speed had made it clear that she wasn't going to continue down this path. Can I take you back to where we started, really, which was on the jurisdictional question because I'm now recalling you sort of ran through something and I wanted to ask you about it, which is in your description of the scenario with the Court of Claims judge and what you were asking for, you mentioned this intervening case. Do you know what I'm talking about? When you were telling us about it, you said there was an intervening case. And I assumed that case, the case you were referring to, was Holmes. So how, if your view is and continues to be that there is a problem of jurisdiction here because there's no money mandating statute for the damages to which she speaks, how do you distinguish Holmes on that basis? My understanding of Holmes was that this Court confirmed that if the basis of the Court of Federal Claims' Tucker Act jurisdiction is a breach of contract, that damages are the presumed remedy for a breach of contract. And so long as the plaintiff doesn't have an obligation to identify any... So if that's the case, then your position, the government's view, is that we do have jurisdiction here? Because obviously as a panel we're compelled to follow Holmes. We are not challenging, I mean we didn't cross the field, we're not challenging the jurisdiction. We are raising an issue with assuming that... Holmes couldn't change Testan, right? Holmes could not change Testan. Testan, a Supreme Court case, says you have no entitlement to any damages as a federal employee until you're in an appointed position. And then you can allege back pay. Right, the problem is not jurisdictional, it's what the theory of damage is. Well actually, and maybe you can help me out here, am I wrong or right that Holmes was really not about back pay in a kind of reinstatement type case, but it was about pursuing future employment opportunities, which is really a damages question, right? Right. And again, in the plaintiff's second amended complaint, her claim of damages flowed from her allegation that the defendant breached the specific provision to provide her reasonable opportunity to meet the conditions precedent. So long as she could identify some damages that were somehow distinct from a claim of back pay, presumably that could be awarded. The problem is that she has never articulated any claim of damages that differs in any way from her claim that she's entitled to the salary and benefits of a social inspector. And what are we to do with the... which you also stated when describing the history of the government versus going back and forth with the court of claims, that the court of claims, it would have to... we'd have to go through discovery. So, I mean, if there's... that's a jurisdictional question, is it not? So, or what? I mean, so you should have... why didn't you go through discovery? We did go through discovery, Your Honor. But we moved for summary judgment on the law without addressing... at the risk of waiving a jurisdictional argument, which we don't want to do. Our contention here is not so much that the court of federal claims didn't possess jurisdiction to adjudicate a breach of contract claim, but that assuming she could demonstrate a breach, she didn't have any damages. So even if the court were to find that she had a breach, there would be no money damages owing. Quick last question. After your December 20... your Postal Service's December 23rd letter to Ms. Speed, at what point, what date and time did she get back to the Postal Service? Was it... I know there was a... So she goes back to the doctor in February of 2006, and then I believe she first contacts the agency in March or April of 2006 and requests reinstatement, both under the settlement agreement and also under the OWCP provisions. Thank you, Your Honors. Thank you, Ms. Hogan. Ms. Plant-Roddington, you have... time consumed? Let's give her a minute of rebuttal, if she needs it anyway. May I please report? I believe the issue of damages, and I think we can get to the heart of this to get around the whole fact pay issue and the appointment process, is to say her lost opportunity. She was not employed by anyone. She did not... if she had been reinstated, she wouldn't need another job. She couldn't get a job for years. So she has damages and she mitigated her damages in going out trying to find other employment. So her damages, while it's connected to perhaps what she was making at the time, it could have been, once she realized she wasn't going to be... In Holmes, it was a question of not expunging bad acts from the official record, which the court assumed would have caused damage to personal reputation and resulted in presently due money damages. Correct. But you don't have that situation. What's your presently due money damages? Her presently due money damages are until she found another job, after being told she's not going to be... That she wants a job, but she doesn't have the job, so she has no presently due damages. But... That's test and unless you're already in the job, you have no entitlement to request pay for or back pay for that position. That position alone, but if we can show that she would have... she filled out applications, she was denied employment, she could have otherwise been employed. Wait, are you suggesting that the breach of contract by the government was the basis upon which she was denied... is that your allegation, that she couldn't get other jobs outside of the government or whatever because of the government's breach of contract? Is that... No, I'm not suggesting that. Okay, but you're suggesting she couldn't get this job. She couldn't get this job. If she had gotten this job, it would have eliminated her need to go to another job and try to get more money from another employer. And so the damages are still there. I mean, they're real. Any breach of contract, they're real. Anything that flows approximately from the breach would be damages she's entitled to. In fact, you were actually offered a postal position in New Orleans. She was offered a postal position in New Orleans, so she really can't even argue a loss of future employment, can she? Well, I believe she can because her family, her daughter... Well, she didn't apply because she was seeking reinstatement under the initial settlement agreement. However, she would have to be located... This is all on the presently due problem. The only thing you can point to is you want a job which you don't have, so you don't have any damages presently due. I respectfully disagree with you. I understand. I believe that the issue that we should concentrate on, even if we get... We have to get the liability to get the damages. But you have to have jurisdiction to get the liability, to get the damages. Yes, and we did file this court at the district court level. That's the problem with the Tucker Act, always. They stated that they didn't have jurisdiction and then we filed it. That's why the presently due always gets you in these government contracts. Settlement agreements, in essence, become really very vulnerable to the person who's trying to get reinstatement. Well, you always have the ability to... If there's a breach, you can ask for a rescission of the settlement agreement, which would mean that you give back your $155,000 and the government can go back and get what your statutory appeal rights were for the initial case. Except that you had two separate agreements here, didn't you? No. You had... It's like you hit... I rear-ended you and I agreed to pay you money and I paid you the money for rear-ending you and then we also had an agreement that, well, if you come over and qualify to cut my grass, you would pay me to cut your grass too, right? No. And I never qualified because I can't start the lawnmower. It's all under one contract. The settlement agreement under Title VII is all under one contract, so if the consideration fails, if they fail to do... Then, of course, the remedy is to open up... She would return the $155,000 and open up the Title VII case and try it. Thank you, Ms. Platt. Do you have anything else you wanted to give us? No. Well, I have a few things. I don't want to belabor the issue. However, I would note that they are stating that December 6th... She stated December 6th is the date that Ms. Speed was put on notice. And if you review that letter, there is no notice in that letter that if she did not remove the restriction that she would not be reinstated. What the letter states is we need more information. We feel there's a... We see there's a restriction there. Let us know. If they had told her that, she would have done the very same thing she did after she received that December 23rd letter, which was uncategorically clear, that if... Because you did not, we are now terminating the agreement. And that's when she knew, I have to get this restriction removed. Thank you. Thank you, Judge. Thank you.